UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Soojung Jang, Ph.D.,

    Plaintiff,

    v.                                        Civil Action No. 2:17-cv-162-jmc

Trustees of St. Johnsbury Academy,
Kingdom Development Company, Inc.,

    Defendants.

## **OPINION AND ORDER**
(Docs. 37, 38)

On July 9, 2018, this Court dismissed the Complaint in this matter for failure to state a claim plausibly alleging defamation (Doc. 35 at 46), and, on the same day, entered judgment against Plaintiff Soojung Jang, Ph.D. (Doc. 36.) Dr. Jang now moves to alter or amend the judgment (Doc. 37), and, if the judgment is altered or amended, Dr. Jang moves for leave to amend her Complaint in order "to set forth all the remaining elements for a claim of defamation."[1] (Doc. 38 at 1.) Defendants Trustees of St. Johnsbury Academy (the Academy) and Kingdom Development Company, Inc. (KDC) jointly oppose both motions. (Docs. 40, 41.) Concluding that Dr. Jang has failed to provide an adequate basis for vacating the judgment and that, in any case, amendment would be futile, Dr. Jang's Motion to Alter or Amend

---

[1] This Court also dismissed Dr. Jang's Complaint for failure to state a claim plausibly alleging "interference with a professional relationship," but Dr. Jang does not seek to amend her Complaint to allege the elements of this tort. (*See generally* Docs. 35, 37, 38.)

the Judgment (Doc. 37) and her Motion for Leave to Amend the Complaint (Doc. 38) are DENIED.

## Factual and Procedural Background

The brief summary that follows contains only the facts and procedural background necessary to resolve the motions presently before the Court.  A comprehensive account of the factual and procedural background giving rise to Dr. Jang's suit may be found in this Court's previous Opinion and Order.  (*See generally* Doc. 35.)

In late October 2017, the Academy and KDC successfully opened the St. Johnsbury Academy-Jeju (SJA-Jeju) on Jeju Island in the Republic of Korea. (Doc. 8 at 7.)  In establishing SJA-Jeju, the Academy and KDC entered into a confidential Cooperative Venture Agreement (CVA) with the Jeju Free International City Development Center, a corporation owned by the Republic of Korea, and Haewul, Inc., a wholly owned subsidiary of the Jeju Free International City Development Center.  (Doc. 8 at 4; *see* Doc. 8-2 at 1–2, § d; *id*. at 1, § a.)

Dr. Jang was a member of the Establishment and Operation of International Schools Subcommittee (the Establishment Subcommittee), a subcommittee formed by the Jeju Provincial Office of Education to review and approve the SJA-Jeju project.  (Doc. 1 at 3, ¶ 23.)  Dr. Jang is also a member of Jeju Solidarity for Participatory Self Government and Environmental Preservation (Jeju Solidarity), a community organization focused on ensuring that students on Jeju receive a proper education.  (*Id*. at 2, ¶¶ 9, 11, 12–13.)  In her role on the Establishment

Subcommittee, Dr. Jang asserted in her original Complaint that she was authorized to investigate the relationship between the entities founding SJA-Jeju and, in particular, to ascertain the Academy and KDC's role in the governance and financing of SJA-Jeju. (*Id.* at 3, ¶ 23; *see also* Doc. 15 at 2.) Specifically, as she stated in her original Complaint, her investigations included seeking "clarification of [the Academy and KDC's] relationship, their control of [SJA-Jeju], and liability for any losses on behalf of [Jeju Solidarity]" (Doc. 1 at 3, ¶ 24), requesting "records concerning the viability of the CVA, as member of POE" (*id.* ¶ 25), and pursuing "records and information." (*Id.* at 4, ¶ 27.) Dr. Jang's investigation also led her to contact Attorney Debra Wilson, the Chief Counsel of the National Association of Independent Schools in the United States. (*See* Doc. 8-4.) Attorney Wilson corresponded with Dr. Jang regarding the specific business structure of the Academy and KDC and their relationship to SJA-Jeju; eventually, Attorney Wilson offered to reach out to the Academy and KDC on behalf of Dr. Jang. (*Id.* at 6.) After contacting the Academy and KDC, Attorney Wilson concluded that Dr. Jang's claims had no merit, at least according to the Academy and KDC. (Doc. 1-1 at 2, § a; Doc. 8-1 at 4, ¶ 10.) Ultimately, Attorney Wilson's findings were presented to the Establishment Subcommittee, who voted to reconfirm the CVA despite Dr. Jang's objections. (Doc. 1-1 at 2, § e.)

Subsequently, on July 12, 2016, Attorney Bruce Palmer, as counsel for the Academy and KDC, sent a letter (the Letter) to the Governor of Education for Jeju Island, and copied the Establishment Subcommittee on which Dr. Jang sat. (*See*

3

*generally* Doc. 1-1.) The Letter detailed Dr. Jang's investigatory efforts in the Republic of Korea and the United States and characterized her investigation as an attempt to undermine the establishment of SJA-Jeju. (*Id.*) In particular, Attorney Palmer expressed a "deep concern[] about unauthorized and disruptive actions and false statements by Dr. Soonjung Jang." (*Id.* at 1.) Given these purported concerns, Attorney Palmer asked the Governor of Education to remove Dr. Jang from the subcommittee or, at the least, to censure and disqualify Dr. Jang from "any further participation in or consideration of the approval of [SJA-Jeju]." (*Id.*)

As a basis for this recusal request, Attorney Palmer alleged that Dr. Jang, at every turn, "challenged the legality and legitimacy of [the Academy's] and KDC's efforts to participate in this project"; that Dr. Jang "attacked the validity of the Cooperative Venture Agreement"; that Dr. Jang "knowingly defamed [the Academy] and KDC in the process, alleging without any factual basis that each seeks through the CVA and other contracts to avoid paying taxes"; that Dr. Jang accused the Academy's headmaster and KDC's CEO of "illegally entering into the agreements without actual authority"; and that Dr. Jang repeatedly questioned the quality of the Academy. (*Id.*) According to the Letter, these actions and statements by Dr. Jang amounted to "an unjustified, concerted campaign of mistruth about [the Academy] and KDC . . . in a transparent effort to scuttle [SJA-Jeju]." (*Id.* at 2.)

Finally, counsel highlighted Dr. Jang's investigatory efforts, including Dr. Jang's contact with Attorney Wilson and Attorney Wilson's subsequent

4

independent review and approval of the CVA² (*id.* at 2, §§ a, c); Dr. Jang's attempts to refute Attorney Wilson's analysis (*id.* § d); and, the Establishment Subcommittee's subsequent vote reapproving the CVA. (*Id.* § e.) In sum, counsel concluded that "[t]he campaign by Dr. Jang to impugn SJA and the integrity of its officials demonstrates her deep bias and disregard for traditional customs and laws" and "merit[s] disqualification to serve on the [Establishment Subcommittee] responsible to review and approve the project." (*Id.* at 3.)

On August 31, 2017, Dr. Jang filed the Complaint in this case, attaching the Letter to her Complaint, and alleged that the Letter is "libelous and defamatory in that it maliciously claimed that the statements of [Dr. Jang] were unauthorized, disruptive and false." (Doc. 1 at 4, ¶ 30.) As noted above, on July 9, 2018, this Court dismissed Dr. Jang's Complaint for failure to state a defamation claim. (Doc. 35 at 46.) In dismissing the Complaint, this Court concluded that Dr. Jang failed to state a defamation claim for two reasons. First, Dr. Jang failed to adequately plead the elements of common law defamation under Vermont law;³ specifically, Dr. Jang's Complaint did not contain sufficient factual allegations for this Court to reasonably infer either that the allegedly defamatory Letter contained a substantially false statement or that, in publishing the Letter, the Academy and

---

[2] The Court notes that, in the Letter, counsel described Dr. Jang's interaction with Attorney Wilson as occurring in February 2015. (Doc. 1-1 at 2, § a.) But given the other evidence in the record (*see, e.g.*, Doc. 8 at 4; Doc. 8-4 at 9–10), it is clear that the correct date is February 2016.

[3] The elements of defamation under Vermont law are as follows: "(1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages." *Lent v. Huntoon*, 143 Vt. 539, 546–47, 470 A.2d 1162, 1167–68 (1983) (footnote omitted).

5

KDC acted with the common law malice necessary to overcome their privileged communication. (*Id.* at 50–51, 56.)  Second, Dr. Jang failed to plead credible facts justifying an inference that the Academy and KDC acted with "some negligence, or greater fault, in publishing" the Letter to the Governor and the Establishment Subcommittee.[4]  (*Id.* at 60.)  For these reasons, on July 9, 2018, this Court dismissed Dr. Jang's Complaint for failure to state a claim plausibly alleging defamation, and, on the same day, entered judgment against Dr. Jang.  (Doc. 36.)

Subsequently, on July 16, 2018, Dr. Jang filed her Motion and Memorandum to Alter or Amend Judgment (Doc. 37), and her Motion for Leave to Amend her Complaint.  (Doc. 38.)  In her first postjudgment motion, Dr. Jang seeks "to alter or amend the judgment dismissing her defamation complaint, to allow plaintiff leave to amend her complaint for defamation with more specificity pursuant [to] Fed. R. Civ. P. 59 and 60(b)(6)." (Doc. 37 at 1.)  As a basis for invoking Rule 59 and Rule 60(b)(6), Dr. Jang states that "leave to alter and amend the judgment should be granted, since [her] motion to amend her defamation complaint would not be futile."  (*Id.*)  In the second postjudgment motion—the Motion for Leave to Amend

---

[4] In interpreting the federal constitution and the U.S. Supreme Court's relevant jurisprudence, the Vermont Supreme Court has stated that one of the elements of defamation is "some negligence, or greater fault, in publishing the statement." *Lent*, 143 Vt. at 546–47 n.1, 470 A.2d at 1167, 1168 n.1 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)); *see also Stone v. Banner Pub. Corp.*, 677 F. Supp. 242, 246 (D. Vt. 1988) ("Under the United States Supreme Court's ruling in *Gertz v. Robert Welch*, 418 U.S. 323, 347 . . . (1974) a private plaintiff in a defamation suit must prove some fault on the part of the defendant.").  In other words, "strict liability for all state defamation now appears impermissible" and the plaintiff must plausibly allege, at least, that the defendant negligently published the allegedly defamatory statement.  *Lent*, 143 Vt. at 546 n.1; *see also* Restatement (Second) of Torts § 580B cmt. c ("The strict liability of the common law has thus expressly been ruled unconstitutional" and "[a] significant measure of fault on the part of the defendant in regard to the falsity of the communication is required.").

6

her Complaint—Dr. Jang states that she "has now amended the complaint to allege that the facts asserted by [the Academy and KDC] . . . were substantially false statements of fact with actual malice, and made without privilege, since the letter was not in response to any request." (Doc. 38 at 1.) As support for this contention, Dr. Jang has appended a redlined Amended Complaint (Doc. 38-1), as well as a document entitled "False Statements," which purportedly sets forth the false statements made in the Letter by counsel for the Academy and KDC. (Doc. 38-3.)

The Academy and KDC oppose both motions. (Docs. 40, 41.) In their joint memorandum opposing Dr. Jang's Motion to Alter or Amend the Judgment, the Academy and KDC argue that Dr. Jang has advanced no cognizable argument for vacating the judgment under the standards set forth under either Rule 59 or Rule 60(b)(6). (Doc. 40 at 1.) Similarly, the Academy and KDC jointly oppose Dr. Jang's attempt to amend her original complaint, asserting that Dr. Jang's proposed Amended Complaint fails to adequately plead defamation. (Doc. 41 at 2.)

## Analysis

As set forth below, the Court concludes that Dr. Jang does not identify a valid basis for vacating or setting aside the judgment under either Rule 59 or Rule 60(b)(6) and that, in any case, amendment would be futile under Fed. R. Civ. P. 15(a). Accordingly, Dr. Jang's Motion and Memorandum to Alter or Amend Judgment (Doc. 37), and her Motion for Leave to Amend her Complaint (Doc. 38), must be DENIED.

## I. Legal Standard

"'[A] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (second alteration in original) (quoting *Ruotolo v. City of New York*, 514 F. 3d 184, 191 (2d Cir. 2008)); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint.") By requiring a party to advance a valid basis for vacating the judgment, the liberal amendment policy set forth in Fed. R. Civ. P. 15(a) is "tempered by considerations of finality." *Williams*, 659 F.3d at 213. "The merit of this approach is that '[t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'" *Nat'l Petrochemical Co. of Iran*, 930 F.2d at 245 (alteration in original) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1489, at 694 (1990); *see also State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly."). Still, the Second Circuit has made clear that "considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Williams*, 659 F.3d at 213.

As a result, the Second Circuit has indicated that, in view of the liberal pleading standards set forth in Rule 15(a), it "'might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment,'" *id.* (quoting *Ruotolo*, 514 F. 3d at 191), "imply[ing] that the merits of the proposed amendment should factor into the Court's calculus in certain circumstances." *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 248 (D. Conn. 2014).

Given the precedent, this Court first considers Dr. Jang's postjudgment motions under the standards applicable to Rule 59 and Rule 60(b)(6) and then turns to analyzing Dr. Jang's postjudgment motions under Rule 15(a).

## II. Rule 59 and Rule 60(b)(6)

As an initial matter, the Court concludes that Dr. Jang does not identify a valid basis for vacating or setting aside the judgment under either Rule 59 or Rule 60(b)(6).

"It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). For that reason, the standard for granting a motion under Rule 59 is "strict," and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995)).

9

Specifically, a motion for reconsideration should be granted "only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). Ultimately, the decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (internal quotation marks omitted).

Like Rule 59, the decision to grant relief under Rule 60(b) is "committed to the sound discretion of the district court." *Shukla v. Sharma*, No. 07-CV-2972 (CBA)(CLP), 2014 WL 4437278, at *3 (E.D.N.Y. Sept. 9, 2014) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). "[T]his discretion is especially broad under [Rule 60(b)(6)], because relief under it is to be granted when appropriate to accomplish justice." *Id.* (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977)). Although Rule 60(b)(6) provides "a grand reservoir of equitable power to do justice in a particular case," this power "is properly invoked only when extraordinary circumstances justify relief or when the judgment may work an extreme and undue hardship." *Empresa Cubana Del Tabaco v. Gen. Cigar Co. Inc.*, 385 F. App'x 29, 31 (2d Cir. 2010) (internal quotation marks omitted). "New arguments based on hindsight regarding how a movant would have preferred to have argued its case do not provide grounds for Rule 60(b) relief." *Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 595 (2d Cir. 2007).

Here, other than a passing reference to Rule 59, Dr. Jang does not identify an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Cf. Kolel Beth Yechiel Mechil of Tartikov*, 729 F.3d at 104. Similarly, Dr. Jang only briefly cites Rule 60(b)(6) and makes no argument that "extraordinary circumstances justify relief" or that the judgment "work[s] an extreme and undue hardship." *Empresa Cubana Del Tabaco*, 385 F. App'x at 31. Instead, rather than advancing a valid basis to satisfy either rule, Dr. Jang seeks to submit an Amended Complaint in order "to set forth all the remaining elements of defamation." (Doc. 38.) In other words, Dr. Jang is attempting to vacate this Court's judgment in order to relitigate the same issues previously decided by this Court. This is not a sufficient basis under either Rule 59 or Rule 60(b)(6) for disregarding the value of finality and the expeditious termination of litigation. *See Sequa Corp.*, 156 F.3d at 144; *Westport Ins. Corp.*, 255 F. App'x at 595.

Nevertheless, as noted above, the Second Circuit has made clear that "considerations of finality do not always foreclose the possibility of amendment [under Rule 15], even when leave to replead is not sought until after the entry of judgment." *Williams*, 659 F.3d at 213. In this case, Dr. Jang asserts that "leave to alter and amend the judgment should be granted, since [her] motion to amend her defamation complaint would not be futile." (Doc. 37.) Although "futility" is not a valid basis for vacating or setting aside a judgment under Rule 59 or Rule 60(b)(6), *see Empresa Cubana Del Tabaco*, 385 F. App'x at 31, whether or not an amendment

11

is "futile" does apply to the inquiry under Rule 15(a). For that reason, in deciding whether to vacate the judgment, the Court now turns to analyzing the merits of Dr. Jang's proposed Amended Complaint under Rule 15(a). *See Faryniarz*, 62 F. Supp. 3d at 248 (analyzing motion to amend, despite plaintiff's failure to satisfy Rule 60(b)).

### III. Rule 15(a)

"[A] Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps the most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (internal quotation marks omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating a court should deny leave to amend only upon "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment"). "An amendment is considered 'futile' if the amended pleading fails to state a claim." *Faryniarz*, 62 F. Supp. 3d at 249 (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979)). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court must accept factual assertions in a complaint as true, this presumption of truth does not apply "to legal conclusions" or "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Here, because Dr. Jang's proposed Amended Complaint does not plausibly state a claim for relief on its face, amendment would be futile under these circumstances. As discussed above, this Court dismissed Dr. Jang's original defamation claim for several reasons. First, she did not adequately plead the elements of common law defamation under Vermont law;[5] specifically, Dr. Jang's Complaint did not contain sufficient factual allegations for this Court to reasonably infer either that the allegedly defamatory Letter contained a substantially false statement or that, in publishing the Letter, the Academy and KDC acted with the common law malice necessary to overcome their privileged communication. (Doc. 35 at 50–51, 56.) Second, Dr. Jang failed to plead credible facts justifying an inference that the Academy and KDC acted with "some negligence, or greater fault, in publishing" the Letter to the Governor and the Establishment Subcommittee.[6]

---

[5] To reiterate, the elements of defamation under Vermont law are as follows: "(1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages." *Lent*, 143 Vt. at 546–47, 470 A.2d at 1167–68.

[6] As noted above, the Vermont Supreme Court has stated that one of the elements of defamation is "some negligence, or greater fault, in publishing the statement." *Lent*, 143 Vt. at 546–47 n.1, 470 A.2d at 1167, 1168 n.1 (citing *Gertz*, 418 U.S. at 347); *see also Stone*, 677 F. Supp. at 246.

13

Dr. Jang's proposed Amended Complaint (Doc. 38-1) does not resolve any of these flaws, any one of which undermines her defamation claim.

First, to demonstrate that the Letter contained a substantially false statement, Dr. Jang's proposed Amended Complaint now states that she "was within her authority as a member of the [Establishment Subcommittee]" to investigate the Academy and KDC (Doc. 38-1 at 3, ¶ 20), and further asserts that the Letter contained "false statements of facts" as set forth in the appended "exhibit." (*Id.* at 4, ¶ 24.) This "exhibit" contains a list of "False Statements" that generally correspond to the Letter's claims[7] and are meant to refute those claims. For example, Dr. Jang states that, contrary to the Letter's assertion, she "never claimed that [St. Johnsbury Academy] was not a private school, but that it is a voucher school and not a 'typical' private school, for which most of the parents pay tuition directly, as opposed to a government funded high school in Vermont." (Doc. 38-3 at 1, § a.) Likewise, the remaining list of "false statements" summarizes Dr. Jang's investigations and justifies her "accusations concerning [the Academy] and KDC." (*Id.* at 1, § g.)

As stated in this Court's previous opinion, however, in portraying her investigations as justified and "authorized," Dr. Jang effectively acknowledges that

---

[7] The Court notes that Dr. Jang has again failed to quote directly from the Letter, despite this Court's clear instruction that "[v]agueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" because "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Tannerite Sports, LLC v. NBCUniversal News Grp., a div. of NBCUniversal Media, LLC*, 864 F.3d 236, 251 (2d Cir. 2017) (second alteration in original) (internal quotation marks omitted); *see also Bloom v. Fox News of L.A.*, 528 F. Supp. 2d 69, 74 (E.D.N.Y. 2007) ("[F]ederal courts do require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice." (internal quotation marks omitted)).

she undertook the acts described in the Letter. In Vermont, "it is not necessary to prove the literal truth of the accusation in every detail, . . . it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation." *Weisburgh v. Mahady*, 147 Vt. 70, 73, 511 A.2d 304, 306 (1986) (quoting W. Prosser & W. Keeton, The Law of Torts § 116, at 842 (5th ed. 1984)). It is plain that the acts described in the Letter and corroborated by Dr. Jang's Amended Complaint are substantially true. Although the parties disagree about the motivations and purpose for Dr. Jang's acts, those disagreements are a matter of pure opinion and are therefore not actionable. *Cf. Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 720 (D. Vt. 2012) ("Courts have . . . routinely rejected defamation claims based upon a 'pure' opinion that is not susceptible of being proven true or false."). Accordingly, Dr. Jang's proposed Amended Complaint does not plausibly allege that the Letter contained a substantially false statement.

Similarly, Dr. Jang's Amended Complaint contains only conclusory allegations that, in publishing the Letter, the Academy and KDC acted with the common law malice necessary to overcome their privileged communication. Dr. Jang's Amended Complaint now states that the Academy and KDC "maliciously" requested that Dr. Jang be removed the Establishment Subcommittee because "no request was made for the [L]etter." (Doc. 38-1 at 4, ¶ 25.) Not only does this new and "threadbare" assertion fail to adequately allege common law malice, *Iqbal*, 556 U.S. at 678, but also this allegation fails to correctly state the

15

common law privilege at issue. As recognized by Vermont law, the privilege to publish information to protect legitimate business interests applies "as long as the [person communicating] reasonably believes that [the] information 'affects a sufficiently important interest of the recipient or a third person' and the [person communicating] was either under a legal duty to communicate the information to the recipient or communicated the information in response to a request." *Skaskiw v. Vermont Agency of Agric.*, 2014 VT 133, ¶ 12 n.2, 198 Vt. 187, 112 A.3d 1277 (quoting Restatement (Second) of Torts § 595). Because an attorney has a legal duty arising out of the attorney's fiduciary relationship with his or her clients, the privilege protects the attorney's honest and reasonable communications intended to protect his or her clients' business interests. Restatement (Second) of Torts § 595 cmt. f. ("[The privilege] is applicable to . . . an attorney . . . making communications . . . to a third person, if the communication is made in a reasonable effort to protect the interest that is entrusted to [the attorney by his or her clients]."). In other words, under these circumstances, it is immaterial to the privilege whether or not the Letter was requested by the Establishment Subcommittee or Governor.

Finally, Dr. Jang's proposed Amended Complaint contains only conclusory allegations that the Academy and KDC negligently delivered the Letter to the Governor and the Establishment Subcommittee. As noted above, to satisfy the constitutional fault requirements imposed by the United States Supreme Court, a plaintiff pleading a defamation claim in Vermont must allege "some negligence, or greater fault, in publishing the statement." *Lent*, 143 Vt. at 546–47 n.1, 470 A.2d

16

at 1167, 1168 n.1 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)). Her Amended Complaint now asserts that the Academy and KDC "negligently" caused their counsel to publish the Letter and further contends that the Letter "negligently" interfered with Dr. Jang's relationship with the Establishment Subcommittee. (Doc. 38-1 at 4, ¶¶ 23, 25.) But again, merely reciting the appropriate level of fault does not constitute a credible claim. *See Faber*, 648 F.3d at 104 ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)). There must be some factual allegation from which this Court can infer fault and none is present in Dr. Jang's proposed Amended Complaint. As a result, Dr. Jang has failed to plausibly allege negligence.

In sum, because Dr. Jang's proposed Amended Complaint fails to state a defamation claim, Dr. Jang's postjudgment motion seeking leave to amend her complaint is futile. Moreover, the Court remains mindful that Dr. Jang has failed under either Rule 59 or Rule 60(b)(6) to identify valid grounds for vacating or setting aside the judgment. *Cf. Williams*, 659 F.3d at 213. Accordingly, although "considerations of finality [under Rule 59 and Rule 60(b)(6)] do not always foreclose the possibility of amendment," *Williams*, 659 F.3d at 213, in this case no basis exists under Rule 15(a) to depart from the strict standards set forth under Rule 59 and Rule 60(b)(6).

## Conclusion

For the foregoing reasons, Dr. Jang's Motion to Alter or Amend the Judgment (Doc. 37) and her Motion for Leave to Amend the Complaint (Doc. 38) are DENIED.

Dated at Burlington, in the District of Vermont, this 12th day of October 2018.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge